# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

OWNERS INSURANCE COMPANY,

    Plaintiff,

    v.                                                    5:23-cv-92

MESHAWN RASHOD JONES and NANCY
FUTCH, as Executrix of the
Estate of Lace Futch,

    Defendants.

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff Owners Insurance Company ("Owners"), dkt. no. 89, and Defendant Nancy Futch, dkt. no. 88. The motions have been thoroughly briefed and are ripe for review. Dkt. Nos. 88, 89, 92, 98, 99, 103, 104. The Court heard oral argument on June 13, 2025. Dkt. No. 115. For the reasons stated below, Owners' motion is **GRANTED**, and Defendant's motion is **DENIED**.

## BACKGROUND

This case involves a shooting near the "No Name Bar" in Willacoochee, Georgia. Dkt. No. 1-1 ¶¶ 5, 7. Owners, an insurance company, seeks a declaratory judgment that it has no duty to defend or indemnify its insured in an underlying lawsuit. See Dkt. No. 1 ¶ 7.

In approximately 1990, Lace Futch ("Mr. Futch") purchased a piece of property located at 609 East Main Street, Willacoochee, Georgia. Dkt. No. 89-5 at 5, 15:8-12. Over the years, Mr. Futch and his wife, Nancy Futch ("Defendant Futch"), rented one of the buildings on the property—called the No Name Bar—for use as a bar and an event venue. Id. at 5-6, 16:13-21:1. On the evening of January 23, 2021, the No Name Bar was rented for a birthday party. Id. at 5-6, 16:13-21:1, Dkt. No. 89-5 at 65. Defendant Meshawn Jones attended the event at the No Name Bar. Dkt. No. 1-1 ¶¶ 5-6.

In the early morning hours of January 24, 2021, Defendant Jones was shot in a drive-by shooting near the property. Id. ¶ 5. The shooting seriously injured Defendant Jones, and he is now quadriplegic. Dkt. No. 1 ¶ 4. The Futches were asleep when Mr. Futch received a call that "there had been a·drive-by shooting" at one of their properties. Dkt. No. 89-5 at 8, 25:6-24. Because Mr. Futch was sick at the time, Defendant Futch went to the property in the morning, observed yellow tape around the building, and saw bullet holes in the cinder block. Id. at 8, 25:25-28:9.

Previously, Mr. Futch acquired a commercial general liability insurance policy with Owners ("the Policy"), which first issued in 2008. Dkt. Nos. 1 ¶ 34, 89-3. The pertinent Policy, effective from January 15, 2021 through January 15, 2022, provided general liability coverage for bodily injury or property damage. Dkt. No. 89-3 at 93. The Policy also provided Owners "the right and duty to

2

defend the insured against any 'suit' seeking those damages." Id.
The Policy set a condition that the insured "must see to it that
[Owners is] notified as soon as practicable of an 'occurrence' or
an offense which may result in a claim." Id. at 102.

Mr. Futch passed away on June 17, 2022, after battling long-
term health issues. Dkt. No. 88 at 6. On July 28, 2022, Defendant
Jones's attorney sent a letter of a potential claim to Defendant
Futch, the executrix of Mr. Futch's estate. Dkt. No. 89-5 at 62.
On August 4, 2022, Defendant Futch forwarded this letter to her
insurance agent and notified Owners of the potential claim. Dkt.
Nos. 89-2 ¶¶ 33, 37, 89-4 at 13, 89-5 at 62, 98-2 ¶¶ 33, 37, 99-1
¶¶ 33, 37.

On December 20, 2022, Defendant Jones brought a negligence
lawsuit against the late Mr. Futch, doing business as "No Name
Bar," in the Superior Court of Atkinson County, Georgia. Dkt. No.
1-1 ¶ 5. Owners provided a defense to Defendant Futch, as
executrix, in this underlying lawsuit subject to a complete
reservation of rights. Dkt. No. 1-3.

On October 9, 2023, Owners filed this declaratory judgment
action against Defendant Jones and Defendant Futch in her capacity
as the executrix of Mr. Futch's estate. Dkt. No. 1. Owners seeks
a declaration as to whether the Policy issued to Mr. Futch affords
coverage for the claims asserted and damages sought by Defendant
Jones in the underlying lawsuit. See generally id. At this time,

both Owners and Defendant Futch move for summary judgment. Dkt. Nos. 88, 89.

**LEGAL STANDARD**

### I.    Summary Judgment

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252. Additionally, the "party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." Walker v. Darby, 911

4

F.2d 1573, 1576 (11th Cir. 1990). "Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 1576–77.

The Court views the record evidence "in the light most favorable to the [nonmovant]," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will draw all justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255.

## II.  Cross-Motions for Summary Judgment

When there are cross-motions for summary judgment, "the district court must methodically take each motion in turn and construe all the facts in favor of the non-movant for each." Thai Meditation Ass'n of Ala. v. City of Mobile, 83 F.4th 922, 926 (11th Cir. 2023). "If, after engaging in this analysis," the Court "determines no genuine issue of material fact exists, then it may appropriately enter summary judgment for a party." Id. "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute." Ga. State Conf. of NAACP v. Fayette Cnty., 775 F.3d 1336, 1345 (11th Cir. 2015) (quoting Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983)) (internal quotation marks omitted) (alterations adopted). But "the mere filing of cross-motions does not automatically empower the court to enter summary judgment for one party." Thai Meditation Ass'n, 83 F.4th at 926 (internal quotation marks and citation

omitted) (alterations adopted). The filing of cross-motions for summary judgment does not alter the Rule 56 standard. See 3D Med. Imaging Sys., LLC v. Visage Imaging, Inc., 228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017); Westport Ins. Corp. v. VN Hotel Grp., LLC, 761 F. Supp. 2d 1337, 1341 (M.D. Fla. 2010).

**DISCUSSION**

I.  **The Interpretation of Insurance Contracts Under Georgia Law**

Under Georgia law, "[i]t is well settled that insurance policies, even when ambiguous, are to be construed by the court, and no jury question is presented unless an ambiguity remains after application of the applicable rules of contract construction." First Fin. Ins. v. Am. Sandblasting Co., 477 S.E.2d 390, 391–92 (Ga. Ct. App. 1996) (citation omitted). "Because insurance policies are contracts of adhesion, drawn by the legal draftsman of the insurer, they are to be construed as reasonably understood by an insured." Id. at 392.

In short, the Court must read the Policy "as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009) (citation omitted). "The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean."

U.S. Fire Ins. Co. v. Cap. Ford Truck Sales, 355 S.E.2d 428, 429 (Ga. 1987) (internal quotation marks and citation omitted).

"The ordinary principle of contract law, that a party seeking to recover under a contract must perform any applicable condition precedent before the contract becomes absolute and obligatory upon the other party, applies to contracts of insurance." Plantation Pipe Line Co. v. Stonewall Ins. Co., 780 S.E.2d 501, 509 (Ga. Ct. App. 2015) (footnote omitted). "It is well established that a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification." Federated Mut. Ins. Co. v. Ownbey Enters., Inc., 627 S.E.2d 917, 919 (Ga. Ct. App. 2006) (quoting Plantation Pipeline Co. v. Royal Indem. Co., 537 S.E.2d 165, 169 (Ga. Ct. App. 2000)); see also Forshee v. Emps. Mut. Cas. Co., 711 S.E.2d 28, 31 (Ga. Ct. App. 2011).

"Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, then the insurer is not obligated to provide either a defense or coverage." Ownbey Enters., Inc., 627 S.E.2d at 919 (alteration adopted). Thus, "under Georgia law, when an insurance policy includes a notice requirement and the insured unreasonably fails to timely comply with the requirement, the insurer is not obligated to provide a defense or coverage." Longleaf in Vinings Homeowners

Ass'n, Inc. v. QBE Ins. Corp., 646 F. App'x 823, 825 (11th Cir. 2016) (citation omitted) (alteration adopted).

Nonetheless, "an insured is not 'required to foresee every possible claim, no matter how remote,' that might arise from an event and give notice of it to his insurer." Forshee, 711 S.E.2d at 31 (citation omitted). "Instead, the law only requires an insured 'to act reasonably under the circumstances.'" Id. Thus, the failure to notify the insurer may be excused "if a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim." Id.

Whether or not the insured's failure to give notice was reasonable is, generally, a question for the finder of fact. Id. "Nevertheless, the facts and circumstances of a particular case may render an insured's delay in giving notice of an occurrence to his insurer unjustified and unreasonable as a matter of law." State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC, 675 S.E.2d 534, 538 (Ga. Ct. App. 2009). "The burden is on the insured to excuse his failure to perform any such unambiguous term of the contract." Criterion Ins. Co. v. Horton, 231 S.E.2d 814, 815 (Ga. Ct. App. 1976) (citation omitted).

To determine "whether an insured has reasonably justified his decision not to notify the insurer," the Court considers "the nature and circumstances of 'the accident' or 'the incident' and the immediate conclusions an ordinarily prudent and reasonable

person would draw therefrom." <u>Forshee</u>, 711 S.E.2d at 31. "Relevant circumstances include the nature of the event, the extent to which it would appear to a reasonable person in the circumstances of the insured that injuries or property damage resulted from the event, and the apparent severity of any such injuries or damage." <u>Id.</u> Further, the Court "may consider whether anyone gave an indication that he intended to hold the insured responsible for the event and resulting injuries and the extent to which the insured acknowledged the likelihood that a claim could arise from the event, either by offering compensation to the injured person or asking him to sign a release." <u>Id.</u> at 31–32. The "trial court must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct of the insured from the perspective of a reasonable person in the same circumstances as those in which the insured found himself." <u>Id.</u> at 32.

In this case, Owners argues that it is entitled to judgment as a matter of law because the insured violated the condition precedent to coverage requiring notice of an "occurrence" as soon as practicable. Dkt. No. 89-1 at 10. Defendant Futch argues that she is entitled to summary judgment because "the facts in this case prove that Defendant Futch notified Owners as soon as she was aware that there was a possible claim against her husband." Dkt. No. 88 at 3.

**II. The Notice Provision Is Unambiguously A Condition Precedent.**

The Policy states that the insured "must see to it that [Owners is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Dkt. No. 89-3 at 102. This notice provision is within the "Conditions" section and is part of the insured's "Duties" under the Policy. Id. at 101–02.

Courts applying Georgia law consistently hold that notice provisions identical to the one in the Policy trigger a condition precedent. E.g., Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, 861 F. App'x 270, 278 (11th Cir. 2021) (affirming the grant of summary judgment for unreasonable delay pursuant to an identical notice provision); State Farm Fire & Cas. Co. v. LeBlanc, 494 F. App'x 17, 21 (11th Cir. 2012); Allstate Ins. Co. v. Airport Mini Mall, Ltd. Liab. Co., 265 F. Supp. 3d 1356, 1377 (N.D. Ga. 2017) ("Georgia courts have repeatedly held that a notice provision [identical to the one in this case] is a condition precedent to coverage." (collecting cases)). Indeed, "Georgia courts have treated similar mandatory language—'you must see to it'—without more, as conditions precedent." LeBlanc, 494 F. App'x at 21 (first citing Forshee, 711 S.E.2d at 30–31; then citing Kay-Lex Co. v. Essex Ins. Co., 649 S.E.2d 602, 606–07 (Ga. Ct. App. 2007)). Moreover, the Policy's placement of the notice provision in a section entitled "Conditions" and a subsection entitled "Duties"

10

"clearly expresses the intention that the notice provision[] be treated as [a] condition[] precedent to coverage." Id. Therefore, in this case, the Policy's notice provision is a condition precedent to coverage. Dkt. No. 89-3 at 102.

Thus, summary judgment in favor of Owners is proper if (1) the shooting was "an 'occurrence' or an offense which may result in a claim" and (2) the insured's delay in giving notice of an occurrence to Owners was "unjustified and unreasonable as a matter of law," thereby excusing Owners' duty to defend and provide coverage. Dkt. No. 89-3 at 102; Walnut Ave. Partners, LLC, 675 S.E.2d at 538.

### III. The Shooting Was an Occurrence or an Offense Which May Result in a Claim.

First, the shooting was an occurrence potentially resulting in a claim. Under the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. No. 89-3 at 105. The Policy covers "bodily injury" or "property damage []" caused by an 'occurrence' that takes place in the 'coverage territory.'" Id. at 93.

Georgia courts routinely recognize that a shooting, similar to the one here, is an occurrence. See, e.g., Mt. Hawley Ins. Co., 861 F. App'x at 278 (rejecting the argument that the insured's "delay in providing notice was justified because it 'was not aware of the existence of coverage'" after a shooting on the insured's

premises); <u>Owners Ins. Co. v. Hawkins</u>, No. 1:22-CV-01265-JPB, 2023 WL 5733838, at *6 (N.D. Ga. Sept. 1, 2023) (rejecting the insured's argument "that it did not view the shooting as an 'occurrence' that required notice until . . . it received the letter of representation").[1]

Here, the shooting caused bodily injury because "Defendant Jones suffered catastrophic injuries, and he is aphasic" as well as quadriplegic. Dkt. Nos. 1 ¶ 4, 99 at 1–2. It also caused property damage because there were bullet holes in the restaurant building. Dkt. Nos. 89-3 at 105 (defining property damage under the agreement), 89-5 at 8, 26:4–25 (Defendant Futch testified that she saw the bullet holes in the cinder block of the building). Finally, the shooting took place in the coverage territory because the coverage territory is defined as the United States of America, Puerto Rico, and Canada. Dkt. No. 89-3 at 103. Thus, under Georgia law, the January 24, 2021 drive-by shooting was an occurrence implicating the Policy.

---

[1] This is not to say that all shootings constitute occurrences under Georgia insurance law. If a shooting was expected or intended from the standpoint of the insured (e.g., the insured was the shooter), it is not an occurrence. <u>Allstate Ins. Co. v. Neal</u>, 696 S.E.2d 103, 106 (Ga. Ct. App. 2010). In this case, no one alleges or insinuates that the Futches were involved in the drive-by shooting.

**IV.  The Delay Is Unreasonable as a Matter of Law**

Second, the insured's delay of eighteen months before notifying Owners of the shooting is neither justified nor reasonable. Imperatively, the following facts are undisputed. Defendant Jones admitted that he was on the premises of the No Name Bar when he was shot on January 24, 2021. See Dkt. Nos. 89-2 ¶ 32, 98-2 ¶ 32, 99-1 ¶ 32. Owners received notice of the shooting on August 4, 2022—approximately one year and six months later. See Dkt. Nos. 89-2 ¶¶ 33, 37, 98-2 ¶¶ 33, 37, 99-1 ¶¶ 33, 37. Defendant Futch testified that Mr. Futch received a phone call in the early morning hours of January 24, 2021, during which Mr. Futch was informed that a drive-by shooting had occurred. See Dkt. Nos. 89-2 ¶ 34, 98-2 ¶ 34, 99-1 ¶ 34. Then, "on the morning of January 24, 2021, [Defendant] Futch—along with her brother-in-law and nephew—went to the No Name Bar and noticed yellow tape around the front of the restaurant building next to the No Name Bar along with bullet holes in the restaurant building." See Dkt. Nos. 89-2 ¶ 35, 98-2 ¶ 35, 99-1 ¶ 35. Defendant Futch's reason for failing to notify Owners is that she "didn't ever dream that this would be an issue." See Dkt. Nos. 89-2 ¶ 36, 98-2 ¶ 36, 99-1 ¶ 36.

**A. The Reason for Delay**

On one hand, Defendants argue Defendant Futch's delay in notifying Owners was reasonable under the facts of this case specifically because of her "initial belief that the shooting was

unrelated to the premises and given that her husband, who had been
dealing with [Owners] with respect to coverage matters, was ill
(and eventually passed away after the subject loss)." Dkt. No. 99
at 5; see also Dkt. No. 88 at 5. On the other hand, it is undisputed
that on the morning of January 24, 2021, Defendant Futch learned
of the shooting from her husband, went to the property, and
observed the caution tape and bullet holes. Dkt. No. 89-5 at 8,
25:25–28:9. The Court considers the Forshee factors to determine
whether Defendant Futch's mistaken belief and her reliance on her
husband present a jury question of reasonableness or whether the
delay is unreasonable as a matter of law.

The first factor, the nature of the incident, weighs in favor
of Owners; the event was a shooting. See Forshee, 711 S.E.2d at
31. The nature of a shooting would "invariably lead an ordinary
policyholder to foresee the possibility of a claim warranting
notice to the insurer." Hawkins, 2023 WL 5733838, at *7. Defendant
Futch learned that this shooting involved the property within
twenty-four hours. Dkt. Nos. 89-2 ¶ 34, 98-2 ¶ 34, 99-1 ¶ 34. Thus,
the serious nature of the event suggests that the insured would
not be reasonably justified in failing to notify the insurer. See
Forshee, 711 S.E.2d at 31.

Second, the Court considers the extent to which it would
appear to a reasonable person in the circumstances of the insured
that injuries or property damage resulted from the event. See

14

_Forshee_, 711 S.E.2d at 31. This analysis also favors Owners. See
_Hawkins_, 2023 WL 5733838, at *7 (Even considering the circumstances
as a drive-by shooting, "the 'ordinary policyholder' would
recognize that the shooting death of an individual on the property
owned or managed by the policyholder could possibly lead to a
claim."). Again, Defendant Futch went to the property the very
same day and observed the caution tape and the bullet holes; she
had actual knowledge, not just constructive knowledge, of the
injuries and property damage which resulted from the event. Dkt.
Nos. 89-2 ¶ 35, 98-2 ¶ 35, 99-1 ¶ 35. Therefore, the damage and
injury implicating the Policy were immediately evident from the
circumstances of the shooting.

The third factor—the severity of any such injuries or damage—
also weighs in favor of Owners. _Forshee_, 711 S.E.2d at 31. As the
Eleventh Circuit put it, "there are times where notice may not be
required because 'an event is so trivial or inconsequential that
a court may properly conclude as a matter of law that no reasonable
person would think that a claim could arise.'" Mt. Hawley Ins.
Co., 861 F. App'x at 278 (quoting _Forshee_, 711 S.E.2d at 31). Near
"[m]urder and brutal assaults, however, are neither trivial nor
inconsequential." Id. Even if the Futches did not know the extent
of Defendant Jones's injuries, they knew it was a drive-by shooting
resulting in police presence and visible property damage. Dkt.
Nos. 89-2 ¶ 35, 98-2 ¶ 35, 99-1 ¶ 35.

Fourth, the Court considers "whether anyone gave an indication that he intended to hold the insured responsible for the event and resulting injuries and the extent to which the insured acknowledged the likelihood that a claim could arise from the event, either by offering compensation to the injured person or asking him to sign a release." Id. This is the only factor that weighs in favor of Defendants. On the record before the Court, neither Defendant Jones nor anyone on his behalf told the Futches that Defendant Jones intended to hold the property owners accountable until at least eighteen months after the shooting. Dkt. No. 89-5 at 62. Defendant Futch also did not offer compensation to Defendant Jones or ask him to sign a release.

Finally, Defendants argue Mr. Futch was incapacitated due to his illness such that it is unreasonable to expect him to have given notice at the time of the shooting. Dkt. No. 115. It is undisputed that Mr. Futch was ill at the time of the shooting and passed away on June 17, 2022—approximately a year and a half after the shooting—from lasting health complications. Dkt. No. 88 at 6. Nevertheless, Mr. Futch's illness does not change the outcome of this case for two reasons.

First, in Georgia, incapacity does not make a contract "absolutely void," Georgia Power Co. v. Roper, 41 S.E.2d 226, 227 (Ga. 1947), or automatically excuse the incapacitated party's obligations. Rather, incapacity makes the contract "voidable at

16

the option of a guardian or representative," Metter Banking Co. v. Millen Lumber & Supply Co., 382 S.E.2d 624, 628 (Ga. Ct. App. 1989) (citing O.C.G.A. § 13-3-24). There is no evidence in the record that a guardian or representative of Mr. Futch attempted to void the insurance contract as his illness progressed.

Second, "to avoid a contract on account of mental incapacity, there must be an entire loss of understanding," Barlow v. Strange, 48 S.E. 344, 345 (Ga. 1904), and the party must be "incapable of managing his estate," Norfolk Southern Corp. v. Smith, 414 S.E.2d 485, 487 (Ga. 1992) (quoting O.C.G.A. § 13-3-24). "The law presumes every man to be sane until there is evidence to the contrary, and the burden is on the party attacking a contract to show the incompetency . . . ." Jones v. Smith, 56 S.E.2d 462, 466 (Ga. 1949). Here, the record is entirely devoid of evidence that Mr. Futch experienced "an entire loss of understanding" at the time of the shooting. Barlow, 48 S.E. at 345. Instead, Defendant Futch testified that Mr. Futch was the one who received the phone call about the shooting and told Defendant Futch about the incident. See Dkt. Nos. 89-2, 98-2, 99-1 ¶ 34. Because he was very sick at the time, he "wasn't able to go" to the property, and Defendant Futch went instead. Dkt. Nos. 89-5 at 8, 25:7-26:6. Although the Court does not doubt Mr. Futch's severe physical illness and condoles his eventual death, physical sickness is not commensurate with the loss of one's mental understanding. Therefore, under

Georgia law, Defendants fail to meet their burden to bring forth proof that the insured was incapacitated and could not give notice to Owners. See Barlow, 48 S.E. at 345; Jones, 56 S.E.2d at 466.

Thus, after reviewing the record and applying the Forshee factors, all that remains is Defendant Futch's subjective belief that notice was not required under the insurance contract. But, as a matter of Georgia law, "an insured cannot avoid the notice requirement by relying on its subjective belief that it has no liability." Airport Mini Mall, Ltd., 265 F. Supp. 3d at 1379; see also Richmond v. Ga. Farm Bureau Mut. Ins. Co., 231 S.E.2d 245, 249 (Ga. Ct. App. 1976) ("Justification for failure to give notice as soon as practicable . . . may not include the insured's conclusion that he was free of fault and that there was no liability to the other party." (quotation omitted)). In other words, "Georgia law 'requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract.'" Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, LP, 409 F. Supp. 3d 1319, 1331 (N.D. Ga. 2019) (quoting Allstate Ins. Co. v. Walker, 562 S.E.2d 267, 268 (Ga. Ct. App. 2002)) (internal quotations omitted), aff'd, 861 F. App'x at 278.

Moreover, Georgia courts have rejected Defendants' very argument—that is, the argument that receipt of a letter informing the insured of potential liability was the first time the insured considered the possibility of an insurance claim, even though the

insured knew about the underlying facts before receiving the letter. Hawkins, 2023 WL 5733838, at *8; Auto Owners Ins. Co. v. Sapp, No. 1:15-CV-90, 2017 WL 957361, at *4 (M.D. Ga. Mar. 10, 2017) (finding an insured's justification for a four-month delay to be "unreasonable as a matter of law" where the insured claimed that they did not foresee a claim "until receiving [a] demand letter"). Under Georgia law, a shooting involving one's property plainly "lead[s] any ordinarily prudent and reasonable person to conclude that [the property owner] might be held liable for the shooting." Hawkins, 2023 WL 5733838, at *7; accord Mt. Hawley Ins. Co., 861 F. App'x at 278 (affirming the grant of summary judgment because the property owner and property manager's delay in providing notice was unjustified where they asserted mere unawareness of the existence of coverage after a shooting on the insured's premises); James River Ins. Co. v. A.L. Miller Vill., LP, No. 5:24-CV-00373, 2025 WL 553631, at *10 (M.D. Ga. Feb. 19, 2025) (granting summary judgment where the property owner failed to notify the insurer of a potential premises liability claim from a shooting). Thus, the insured's failure to notify is unjustified.

**B. The Length of Delay**

"Georgia courts have held that a delay of as little as three months [before] notice to the insurer is unreasonable as a matter of law." LeBlanc, 494 F. App'x at 23 (citing Diggs v. S. Ins. Co., 321 S.E.2d 792 (1984)). Thus, here, a delay of over one and a half

years between the incident and the notice is unreasonable as a matter of law. See, e.g., Protective Ins. Co. v. Johnson, 352 S.E.2d 760, 762 (Ga. 1987) (finding seventeen-month delay in providing notice unreasonable as a matter of law); Mt. Hawley Ins. Co., 861 F. App'x at 278 (twenty-three-month delay); Hawkins, 2023 WL 5733838, at *7 ("In sum, a delay of five months between the occurrence in this case—a fatal shooting—and notice to the insurer is unreasonable as a matter of law."); A.L. Miller Vill., LP, 2025 WL 553631, at *10 ("[T]he Court easily concludes that the Insureds' delay of nearly 11 months [after a shooting] is unreasonable as a matter of law." (emphasis added)).

Therefore, Owners is entitled to summary judgment because, as a matter of law, the undisputed facts show that the insured breached a condition precedent to coverage. "Georgia case law is quite settled." Mt. Hawley Ins. Co., 861 F. App'x at 275. "Insurance companies aren't obligated to defend an insured or provide coverage if the insured unreasonably failed to comply with a conditional notice requirement." Id.[2]

### CONCLUSION

For these reasons, Owners' motion for summary judgment, dkt.

---

[2] Because the failure to comply with the condition precedent excuses Owners' duty to defend and indemnify as a matter of law, the Court need not reach the parties' arguments about fraud or material misrepresentations. Defendant Futch also withdrew her potential standing argument at the motions hearing. Dkt. No. 115.

no. 89, is **GRANTED,** and Defendant Futch's motion for summary judgment, dkt. no. 88, is **DENIED.** The Court **DECLARES** that Owners does not owe a duty to defend or indemnify the estate of Mr. Futch in the underlying lawsuit or any claim or judgment arising therefrom. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff Owners and **CLOSE** this case.

      **SO ORDERED** this 3rd day of July, 2025.


_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA